1
2
3
4
5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6   KEENEN R. AGEE,                              Case No. 3:24-cv-00306-MMD-CSD

7                          Plaintiff,                    ORDER

8        v.

    RENO POLICE DEPARTMENT, *et al.,*

9                          Defendants.

10

11   **I.    SUMMARY**

12        Pro se Plaintiff Keenen R. Agee brings this action under 42 U.S.C. § 1983,

13   alleging that numerous City of Reno Defendants ("City Defendants"[1]) and Washoe

14   County Defendants ("County Defendants"[2]) violated his civil rights when he was

15   arrested on two occasions in 2023 and prosecuted for domestic battery, among other

16   offenses, in Nevada state court.[3] (ECF No. 10 ("Amended Complaint").) All state

17   criminal charges filed against Agee were ultimately dismissed before reaching trial.

18        Now before the Court are County and City Defendants' respective motions to

19   dismiss. (ECF Nos. 14 ("County Defendants' Motion"[4]); 16 ("City Defendants' Motion"[5]).)

20

21   _____

22   [1]City Defendants are the City of Reno, the Reno Police Department ("RPD"),
     Police Chief Kathryn Nance, Mayor Hillary Schieve, Director of Finance Vicki Van
23   Buren, and RPD Officers Christopher Rose, Derek Jones, and Dylan Staples. (ECF No.
     10.)
24
     [2]County Defendants are Washoe County District Attorney ("D.A.") Christopher
25   Hicks; Deputy D.A. Stephan Hollandsworth; County Public Defender ("P.D.") Evelyn
     Grosenick; and Deputy P.D. Scott Fahrendorf. (ECF No. 10.)
26
     [3]Because Plaintiff is not incarcerated, screening of the Amended Complaint is not
27   required under 28 U.S.C. § 1915A.

28   [4]Plaintiff responded to County Defendants' Motion (ECF No. 26) and County
     Defendants replied (ECF No. 33).

As further explained below, the Court grants City Defendants' Motion as to all claims against the named Reno officials and entities, but gives Plaintiff leave to amend his claims against Police Chief Nance and the City of Reno. The Court also grants County Defendants' Motion as to all claims against the named Washoe County prosecutors and public defenders, but dismisses some claims against D.A. Hicks and Deputy D.A. Stephan Hollandsworth without prejudice. The Court further grants County Defendants' motion to strike Plaintiff's fugitive supplemental filing (ECF No. 46 ("Motion to Strike")). Finally, given that the Court will independently permit Plaintiff to amend, the Court denies as moot Plaintiff's motion to file a second amended complaint (ECF No. 53 ("Motion to Amend")[6]) adding allegations related to an additional arrest. However, if Plaintiff wishes to assert claims related to the newly-identified arrest in his third amended complaint, he may do so only within the limited bounds of this order, and he may not assert a claim arising under the Fifth Amendment.

## II.    BACKGROUND[7]

Agee initiated this lawsuit after he was arrested by RPD Officers in Reno, Nevada, on two occasions in 2023 roughly four months apart. (ECF Nos. 1, 10.) Following each of these arrests, Plaintiff faced state-court criminal charges, including several charges for domestic battery.[8] (ECF Nos. 1-3, 10, 14.) The Washoe County District Attorney's Office prosecuted Agee, but all charges were ultimately dropped. (*Id.*)

---

[5]RPD Officers Rose, Jones, and Staples answered Plaintiff's Amended Complaint (ECF No. 15) and do not move for dismissal with the other City Defendants. Plaintiff responded to City Defendants' Motion (ECF No. 24) and City Defendants replied (ECF No. 31).

[6]City Defendants responded to the Motion to Amend (ECF No. 61) and County Defendants joined that response (ECF No. 62).

[7]The following facts are adapted from the Amended Complaint (ECF No. 10) unless otherwise noted.

[8]The Court takes judicial notice of Reno Justice Court filings in Case Nos. RCR202-123337 and RCR2023-122008, where these filings are relevant to the pending motions and where notice is appropriate. (ECF No. 1-3). *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (noting that when ruling on a motion to dismiss, a court may consider, *inter alia*, "documents incorporated into the complaint by

Agee filed his original complaint (ECF No. 1) on July 12, 2024, and filed the operative Amended Complaint (ECF No. 10) shortly thereafter, making largely the same substantive allegations but adding defendants. Plaintiff sues various City Defendants—naming the individual RPD officers involved in his arrests, Mayor Hillary Schieve, Finance Director Vicki Van Buren, Police Chief Nance, RPD, and the City of Reno itself. (*Id.*) He also sues multiple Washoe County Defendants connected to the District Attorney's Office and Public Defender's Office—naming the County's elected D.A. Christopher Hicks, Deputy D.A. Hollandsworth, appointed P.D. Evelyn Grosenick, and Deputy P.D. Scott Fahrendorf. (*Id.*)

Plaintiff first alleges that he was "wrongfully arrested and threatened bodily harm" on February 2, 2023, in relation to an unidentified "alleged crime" which occurred several weeks earlier. (*Id.* at 5.) Agee was sitting in his parked car when RPD Officer Derek Jones approached from behind and, upon recognizing Plaintiff, told him he was under arrest for pending charges, while demanding he get out of his car. (*Id.*) Officer Jones "refused to tell [Agee] why [he] was under arrest," stating he would only tell Agee the charges against him after he exited the car, and further threatening that "he w[ould] bust the windows out and drag [Agee] out" if Plaintiff refused to comply. (*Id.*) Plaintiff ultimately got out of his car "under fear and coerced terms," as he was afraid he would otherwise be physically harmed or would suffer property damage. (*Id.*)

Plaintiff was arrested again on May 28, 2023. (*Id.*) On that day, while returning home from a hair appointment, he was stopped by RPD Officer Dylon Staples, who was driving an unmarked SUV. (*Id.*) Officer Staples put Agee in handcuffs for attempting to record the encounter. (*Id.*) RPD Officer Christopher Rose arrived at the scene in

---

reference, and matters of which a court may take judicial notice"); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (providing that a Court may take judicial notice of proceedings in other courts which are directly related to matters at issue). Plaintiff does not specify the criminal brought against him in his allegations in the Amended Complaint, but court records attached to his original complaint indicate that he was arrested in February 2023 for domestic battery and first degree home invasion, and in May 2023 for home invasion constituting domestic battery, second degree burglary, preventing 911 call, child endangerment, and first degree domestic battery. (ECF No. 1-3.)

1   another unmarked RPD van, and instructed Agee to sit in front of his vehicle. (*Id.*)

2   Although Agee followed all commands, Officer Staples stopped him and slammed him

3   to the ground with enough force that he could have been "crippled or killed." (*Id.*)

4   Because Plaintiff was in handcuffs with his arms locked behind his back, he could not

5   catch himself to lessen the impact of the fall. (*Id.*) On the ground, still handcuffed, Agee

6   was "dragged." (*Id.* at 5-6.) He suffered third degree burns on his shoulders, which

7   remained visible long after the incident, as well as a wrist fracture and wrist cuts. (*Id.*)

8   Plaintiff informed the officers that he needed medical help, but the request was denied,

9   and he was put in an "unnecessary wrap" and sent to Washoe County Detention Center

10  with no treatment for his injuries. (*Id.*)

11      After these arrests, the Washoe County District Attorney's Office pursued

12  charges against Agee. Plaintiff alleges that during this prosecution, the "DA violated the

13  Brady law by not having acknowledged alleged victim affidavit which would have

14  cleared the plaintiff on numerous of charges." (*Id.* at 7) All charges were later dropped.

15  (ECF No. 1-3.) Although Plaintiff does not present details about the reason for the

16  dismissal, Defendants assert that the charges were dismissed without prejudice

17  because of "the lack of cooperation from his victims" involved in underlying domestic

18  disturbances. (ECF No. 61 at 2.)

19      Agee further asserts that Deputy P.D. Fahrendorf, who was appointed to defend

20  him, failed to provide evidence which Plaintiff requested after the criminal charges

21  against him were dismissed. (ECF No. 10 at 7.) In particular, Fahrendorf withheld body

22  camera footage from Plaintiff's arrests and stated it was against his office's policy to

23  provide footage to clients. (*Id.*) When asked, Fahrendorf told Agee he could not show

24  him the relevant policy. (*Id.*)

25      Relying upon these factual allegations, Agee asserts claims under 42 U.S.C. §

26  1983 based on an array of constitutional theories, as well as tort claims, listing "[i]llegal

27  search & seizure, excessive force, deprived of liberty & freedom without due process of

28  law[, f]ailure to investigate properly, false imprisonment, false arrest, malicious

4

prosecution, lack of probable cause, defamation of character, [and *Brady*] violation." (*Id.* at 4.) Plaintiff also states broadly that he has suffered violations of the Fourth, Fifth, Eight, and Fourteenth Amendments, and lists "[e]xcessive high bail" and police perjury as additional claims. (*Id.*) In asserting these claims, Agee does not specify which he intends to bring against each Defendant, nor does he distinguish between the facts he considers relevant to each type of violation. Agee requests extensive damages for financial and personal losses resulting from his arrest and prosecution. (*Id.* at 6.)

RPD Officers Rose, Jones, and Staples answered the Amended Complaint. (ECF No. 15.) The remaining City Defendants now move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16.) County Defendants separately move for dismissal under the same rule. (ECF No. 14.) Agee also requests leave to file a second amended complaint adding a new claim arising under the Fifth Amendment related to a third arrest which occurred on October 12, 2023 – several months after the arrests described in the current operative pleading. (ECF No. 53.) He alleges that at that time, he was arrested by Officers Burda, Thornton, and Brunson, and that although he invoked his right to remain silent, the officers repeatedly asked for his name and subsequently charged him with resisting arrest. (*Id.* at 2.)

## III.  DISCUSSION

City Defendants and County Defendants each move to dismiss Plaintiff's Section 1983 claims under Fed. R. Civ. P. 12(b)(6). (ECF Nos. 14, 16.) *See* Fed. R. Civ. P. 12(b)(6) (providing that a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted"); Fed. R. Civ. P. 8(a)(2). The Court considers each dismissal motion in turn, accepting the allegations in the Amended Complaint as true—and liberally construing those allegations in the light most favorable to Agee given his pro se status—while bearing in mind that wholly vague and conclusory allegations are insufficient to state a claim even when a plaintiff proceeds pro se. *See Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) ("We construe pro se complaints liberally, especially in civil rights cases . . . 'However, a liberal interpretation . . . may not supply

1  essential elements of the claim that were not initially pled. Vague and conclusory

2  allegations of official participation in civil rights violations are not sufficient to withstand a

3  motion to dismiss.'") (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.1992)). *See*

4  *also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

5  550 U.S. 544, 555 (2007)) ("While Rule 8 does not require detailed factual allegations, it

6  demands more than 'labels and conclusions' or a 'formulaic recitation of the elements of

7  a cause of action'"). The Court also addresses County Defendants' Motion to Strike and

8  Plaintiff's Motion to Amend. (ECF Nos. 46, 53.)

9        **A.    City Defendants' Motion to Dismiss (ECF No. 16)**

10        The Court first addresses City Defendants' Motion requesting dismissal of

11  Plaintiff's claims against all named Reno officials and municipal entities (including

12  Mayor Schieve, Finance Director Van Buren, Police Chief Nance, the City of Reno and

13  RPD.[9] (ECF No. 16.) City Defendants argue that Agee fails to state viable claims for

14  relief under Section 1983 because his factual allegations go only to the actions of the

15  individual RPD Officer Defendants, while no allegations suggest that any other Reno

16  officials or entities were responsible for any related constitutional deprivations. (ECF No.

17  16 at 4.). In response, Plaintiff primarily argues that the City Defendants in question

18  have authority and oversight over individual police officers, attaching various police

19  records from his own case as exhibits to his opposition. (ECF No. 24.)

20        In order to state a claim for relief against an individual under 42 U.S.C. § 1983, a

21  plaintiff must allege that a defendant (1) acted under color of state law, and (2) deprived

22  a plaintiff of a constitutional right. *See, e.g.*, *Borunda v. Richmond*, 885 F.2d 1384, 1391

23  (9th Cir. 1989); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (noting the

24  requirement of proximate causation). In addition, "[l]iability under §1983 arises only

25  upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d

26  1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)).

27  

28        [9]As noted, RPD Officers Rose, Jones, and Staples answered the Amended
Complaint and do not seek dismissal. (ECF No. 15.)

1    *See also Crumpton*, 947 F.2d at 1420. The general requirement for personal culpability

2    in Section 1983 actions extends to claims against supervisors: "A supervisor is only

3    liable for constitutional violations of his subordinates if the supervisor participated in or

4    directed the violations, or knew of the violations and failed to act to prevent them. There

5    is no respondeat superior liability under section 1983." *Taylor*, 880 F.2d at 1045.

6        As the Court has already noted, Plaintiff does not specify which claims he intends

7    to assert against each Defendant, and his factual allegations are comparatively sparse

8    given the number of claims he purports to bring. *See Litmon*, 768 F.3d at 1241

9    (providing that conclusory and vague allegations of official misconduct are inadequate

10   even when a plaintiff is proceeding pro se). Nevertheless, the Court construes the

11   Amended Complaint liberally, considering the claims Plaintiff may have intended to

12   bring against city government officials as individuals, before turning to claims against

13   the municipal entities.

14                  **1.    Mayor Schieve and Finance Director Van Buren**

15       The Court finds that Plaintiff fails to state a claim against Mayor Schieve or

16   Finance Director Van Buren because he fails to allege facts going to their participation

17   in any violation of his constitutional rights. *See Borunda*, 885 F.2d at 1391; *Taylor*, 880

18   F.2d at 1045. As City Defendants argue, Agee's central factual allegations relate to the

19   conduct of the individual RPD Officer Defendants during the 2023 arrests, and nothing

20   suggests that Schieve and Van Buren participated in that allegedly unconstitutional

21   conduct. As to Mayor Schieve, Agee's primary allegation is that she "funds" the RPD.

22   (ECF No. 10 at 5.) In his opposition, Agee further points to Mayor Schieve's general

23   responsibilities in appointing and supervising the police chief, working with City Council

24   to allocate budget and resources, and directing police accountability policy. (ECF No. 24

25   at 2.) Even assuming the truth of these assertions, merely funding a police department,

26   having generic involvement in adjacent policy, and appointing high-level leadership

27   does not proximately cause the constitutional deprivations carried out by individual

28   officers as required to support a Section 1983 claim. *See Crumpton*, 947 F.2d at 1420

1    (discussion requirement for personal involvement under Section 1983); *Ashcroft*, 556

2    U.S. at 678 (requiring more than a mere formulaic recitation of a claim).

3        Similarly, the Amended Complaint includes only a cursory reference to Van

4    Buren's status as Reno's Finance Director. (ECF No. 10 at 5.) In his opposition, Agee

5    argues only that Van Buren is liable because she oversees financial, management, and

6    budgeting processes related to the police department and works closely with the police

7    chief. (ECF No. 24 at 2.) The general relationship between funding and police

8    operations suggests at most a diffuse connection between Van Buren and the central

9    allegations about the arrests in the Amended Complaint. And Van Buren has no

10   supervisory relationship with individual RPD Officers. *See Taylor*, 880 F.2d at 1045.

11       The Court thus dismisses Plaintiff's claims against Mayor Schieve and Finance

12   Director Van Buren. Because the Court finds that amendment would be futile, given

13   these Defendants' lack of personal participation and the inapplicability of supervisory

14   liability, the Court the dismisses the claims with prejudice. *See Kendall v. Visa U.S.A.,*

15   *Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if

16   it is clear that the complaint could not be saved by amendment.").To the extent Plaintiff

17   wishes to assert factual allegations based on the City of Reno and RPD's policies,

18   customs, and training and supervision—rather than on Schieve and Van Buren's

19   discreet personal participation—the Court analyzes those allegations as part of the

20   claims against the City of Reno and RPD below. *See, e.g.*, *Kentucky v. Graham*, 473

21   U.S. 159, 165-66 (1985) (finding that suits against a government official in an official

22   capacity is in effect a suit against the government entity such that naming both is

23   redundant).

24               **2.    Police Chief Nance**

25       Plaintiff also fails to support any Section 1983 claim against Police Chief Nance.

26   Agee acknowledges that Nance was not directly involved in his 2023 arrests, and does

27   not state facts indicating that Nance's action or inaction resulted in constitutional

28   deprivations separate from those arrests. (ECF Nos. 10, 24.) Although under limited

circumstances Nance may be liable for the unconstitutional conduct of individual RPD officers in her capacity as RPD supervisor, these limited circumstances creating liability arise only if she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *See Taylor*, 880 F.2d at 1045. While Agee argues that "[Nance's] jurisdiction shows the pattern of misconduct and improper training which led to the violations of Plaintiff's constitutional rights" (ECF No. 24 at 2), he does not allege that Nance directed her subordinates' allegedly unconstitutional conduct or was aware of officers' violations and failed to intervene to prevent them. More is required to hold a supervisor to be liable. Moreover, it seems that Plaintiff may be attempting to use the same vague factual contentions about RPD's responsibility for misconduct and improper training to support both his claims against Police Chief Nance and his claims against the City of Reno and RPD. Absent allegations that Nance *herself* was responsible for improper training, these contentions are more properly directed against the municipality, and Plaintiff's claim against Nance is duplicative. *See Graham*, 473 U.S. at 165-66.

Accordingly, the Court dismisses Plaintiff's claims against Chief Nance. However, because the Court finds that Plaintiff could plausibly cure the deficiency by alleging facts going to Nance's personal role in or culpability for some unconstitutional conduct by subordinate RPD Officers, the dismissal is without prejudice. Plaintiff is cautioned that, should he seek to support a claim against Nance in an amended complaint, he must allege facts going to her participation, direction, or knowledge and lack of intervention in a constitutional deprivation at the hands of RPD Officer Defendants under her supervision. *See Taylor*, 880 F.2d at 1045. Plaintiff may not merely resort to the same facts about general RPD policy and custom that he also uses to sue the City itself, and he may not simply guess or assume the responsibilities under her purview.

### 3.    City of Reno and RPD

City Defendants next argue that Plaintiff has failed to state claims against the City of Reno and RPD, and the Court again agrees. As a preliminary matter, RPD is a governmental subdivision of the City of Reno which "may not, in the department name,

sue or be sued" without statutory authorization. *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996) (internal citations omitted). *See also, e.g.*, *Davis v. RPD Triplett*, Case No. 3:22-cv-00326-RCJ-CSD, 2023 WL 5975136, at *3 (D. Nev. Sept. 13, 2023) (RPD is a department of the City of Reno); Fed. R. Civ. P. 17(b) (for parties except for individuals and corporations, capacity to be sued is determined by law of the state where the court is organized). Thus, Plaintiff may bring claims against the City of Reno, which includes RPD as its governmental subdivision, but may not bring claims against RPD independently. *See Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015).

To hold a municipal government like the City of Reno liable under Section 1983, a plaintiff must generally demonstrate that an alleged constitutional deprivation resulted from a "policy or custom" of the municipality. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167-68 (9th Cir. 2014) (finding a plaintiff must show an "'action pursuant to official municipal policy caused [his] injury") (internal citation removed). It is not sufficient to allege that a municipal defendant is responsible for its officials' or employees' conduct on a *respondeat superior* basis. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."); *Gordon v. County of Orange*, 6 F.4th 961 (9th Cir. 2021) (noting that municipal liability "may not be predicated on isolated or sporadic incidents, but rather must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy") (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). A plaintiff may also support a claim against a municipality where they "prove that inadequate training or supervision [of city personnel] was the *moving force* behind the deprivation." *Sandoval*, 756 F.3d at 1168 (emphasis added). To bring a claim based on the inadequacy of police training, however, a plaintiff must demonstrate "the failure to train in relevant respects amounts to deliberate indifference to the

1  constitutional rights of persons with whom the police come into contact."[10]   *City of*

2  *Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989) (permitting a plaintiff to bring claims

3  against a municipal entity under the Fourteenth Amendment Due Process Clause when

4  police officers failed to provide medical attention to an arrestee, but noting the

5  deliberate indifference requirement).

6       Here, Agee fails to support a claim against the City of Reno under the *Monell*

7  standard. *See Monell*, 436 U.S. at 691. He states no facts going to any policy or custom

8  causing the alleged constitutional deprivations carried out by RPD Officers (for example,

9  policies or customs related to the use of excessive force in violation of the Fourth

10 Amendment, or denial of medical treatment in violation of the Fourteenth Amendment

11 right to due process). And although he argues that the department inadequately trains

12 its officers in general and cursory terms, Plaintiff does not state facts suggesting that

13 training or supervision were a "moving force" behind RPD Officers' actions, nor that

14 failures in these arenas were part of a widespread practice. *See Harris*, 489 U.S. at 379;

15 *Sandoval*, 756 F.3d at 1168.

16      The Court thus dismisses Plaintiff's claims against the City of Reno and its

17 governmental subdivision RPD. Because, construing the allegations liberally, Plaintiff

18 could plausibly amend the operative complaint to properly state a *Monell* claim, the

19 Court will dismiss the claims without prejudice and with leave to amend. If Plaintiff

20 attempts to cure the identified deficiencies in his municipal claims, he must allege (1) a

21 specific constitutional deprivation during his arrests and/or prosecution; (2) that was

22 caused by the enforcement of an express municipal policy, or by a "widespread practice

23 that is so permanent and well-settled that it constitutes a custom or practice," or by a

24 _____

25      [10]In *City of Canton, Ohio v. Harris*, 489 U.S. 378, the Supreme Court noted that

26 "*Monell* will not be satisfied by a mere allegation that a training program represents a
   policy for which the city is responsible. Rather, the focus must be on whether the
   program is adequate to the tasks the particular employees must perform, and if it is not,

27 on whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.*
   at 379. The Court further noted that "the identified deficiency in the training program

28 must be closely related to the ultimate injury." *Id.*

final policymaker who had "actual or constructive notice of an omission in their training program" which "causes city employees to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Gordon*, 6 F.4th at 974. And if he wishes to base a claim against the City of Reno on improper training, he must allege facts sufficient to support that "the failure to train in relevant respects amounts to deliberate indifference" to Plaintiff's constitutional rights, and also that this failure caused the *specific* injuries he alleges. *See Harris*, 489 U.S. at 379.

### B. County Defendants' Motion to Dismiss (ECF No. 14)

The Court next turns to Plaintiff's claims against Washoe County Defendants, who include district attorneys and public defenders allegedly involved in his criminal case in Nevada state court. (ECF No. 14.) In their Motion, County Defendants argue all claims against them fail as a matter of law because (1) Plaintiff's excessive bail claim is barred by prosecutorial immunity and subject to dismissal under the *Rooker-Feldman* doctrine; (2) Plaintiff's criminal case was dismissed before any trial, and therefore he cannot state any claim based on a *Brady* violation; (3) a public defender is not a state actor for purposes of Section 1983; and (4) Plaintiff makes no allegations against Defendants Hicks and Grosenick. (*Id.*) The Court addresses these arguments as they each apply to claims against the named district attorneys and public defenders.

### 1. D.A. Hicks and Deputy D.A. Hollandsworth

Plaintiff asserts claims for excessive bail and *Brady* violations which appear to be directed primarily at D.A. Hicks and Deputy D.A. Hollandsworth. (ECF No. 10.) In their Motion, County Defendants first argue that Plaintiff's claim of excessive bail is barred by prosecutorial immunity. (ECF No. 14 at 3-4.) The Court agrees. The Eighth Amendment to the Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. *See also Baze v. Rees*, 553 U.S. 35, 47 (2008). To prevail on an excessive bail claim under Section 1983, a plaintiff must show that the bail amount in question was intended to achieve an invalid government purpose, or that "the amount of bail was excessive in

light of the purposes for which it was set." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 661 (9th Cir. 2007). *See also United States v. Salerno*, 481 U.S. 739, 753-54 (1987) (bail cannot exceed the amount reasonably calculated to support an acceptable government interest). A plaintiff must also demonstrate that a defendant was the "actual and proximate cause of his bail enhancement." *Galen*, 477 F.3d at 663. However, where the defendant is a prosecutor, their request that the court "impose high bail or no bail without just cause" is a function "intimately associated with the judicial phase of the criminal process" and is generally protected by the doctrine of absolute prosecutorial immunity. *Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1068, *aff'd sub nom. Ismail v. Cnty. of Orange*, 676 F. App'x 690, 691 (9th Cir. 2017) ("requesting a defendant be remanded into custody, adding or dropping charges, requesting high bail . . . are prosecutorial decisions intimately associated with the judicial phase of the criminal process" conferring absolute immunity).

Although the Amended Complaint includes no facts about the specific amount of bail set or how that amount was determined, Plaintiff seems to contend that prosecutor defendants sought excessive bail causing financial distress and contributing to his "28 days behind bars." (ECF No 10 at 6.) In his opposition to County Defendants' Motion, Plaintiff also argues that the prosecutors relied on lies and fabrications in requesting bail. (ECF No. 26 at 2.) These claims fail as a matter of law, given that prosecutors' bail requests—even for exceptionally high bail—are entitled to absolute immunity. *See Ismail*, 676 F. App'x at 691. Moreover, Plaintiff makes no factual allegations connecting the amount of bail set in this case to a request by prosecutors – as opposed to the decisions of other actors. *See Galen*, 477 F.3d at 663. And with regard to elected D.A. Hicks, Plaintiff states no facts going to personal involvement as required to state a Section 1983 claim, even setting aside the question of Hicks' prosecutorial immunity. *See Taylor*, 880 F.2d at 1045. The Court thus dismisses Plaintiff's Eighth Amendment

1   excessive bail claims with prejudice because amendment would be futile.[11] *See*

2   *Kendall*, 518 F.3d at 1051.

3       County Defendants next argue that because Plaintiff's state criminal case was

4   dismissed before any criminal trial, he cannot state a plausible claim for a *Brady*

5   violation. (ECF No. 14 at 6-7.) Agee asserts that the "DA" violated "the Brady law" by

6   not acknowledging a victim affidavit (ECF No. 10 at 7.) "There are three components of

7   a true Brady violation: The evidence at issue must be favorable to the accused, either

8   because it is exculpatory, or because it is impeaching; that evidence must have been

9   suppressed by the State, either willfully or inadvertently; and prejudice must have

10   ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82. *See Brady v. Maryland*, 373 U.S.

11   83, 87 (1963). Here, Plaintiff cannot establish prejudice a matter of law, because to do

12   so, there must be "a reasonable probability that the result of the trial would have been

13   different if the suppressed evidence had been disclosed to the defense." *Woods v.*

14   *Sinclair*, 764 F.3d 1109, 1127 (2014). Plaintiff's Nevada criminal case was dismissed on

15   July 25, 2023. (ECF No. 1-3 at 2.) For that reason, without reaching any other potential

16   deficiencies in Plaintiff's *Brady* claim, the Court dismisses this claim with prejudice.

17       The Court notes that County Defendants limit their analysis of discreet claims

18   against the prosecutor defendants in Plaintiff's undoubtedly vague pleading to the

19   excessive bail and *Brady* violation claims discussed above. However, because County

20   Defendants request dismissal of the Amended Complaint in its entirety while the Court

21   must construe a pro se complaint liberally, the Court also briefly reviews Plaintiff's other

22   listed claims, to the extent it is unclear whether the intended defendants for some of

23   those claims are the RPD officers, the prosecutor defendants, or both. For example,

24   Plaintiff ostensibly lists claims for false arrest, false imprisonment, and malicious

25   prosecution (ECF No. 10 at 4), which courts may sometimes analyze as violations of the

26   Fourth and Fourteenth Amendments under Section 1983. *See, e.g., Cabrera v. City of*

27

28   [11]The Court need not reach County Defendants' alternative argument that the
excessive bail claims should be dismissed under the *Rooker-Feldman* doctrine.

*Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). And Plaintiff broadly alleges that he was "deprived of due liberty & freedom without due process of the law" and that there was a "lack of probable cause" and "failure to investigate" (ECF No. 10 at 4-5) – general assertions about supposed constitutional deprivations which Agee may intend to direct at the prosecutor defendants. Regardless of his intent, Plaintiff has clearly failed to include factual details sufficient to state these claims against the prosecutor defendants—or even to allow the Court to address the scope and elements of the claims with these Defendants in mind. *See Crumpton*, 947 F.2d at 1420; *Ashcroft*, 556 U.S. at 678. Accordingly, the Court dismisses any such intended claims. Nevertheless, given Plaintiff's pro se status, the Court will not summarily dismiss these other claims against D.A. Hicks and Deputy D.A. Hollandsworth with prejudice.[12] To the extent Plaintiff intended to assert claims against these defendants other than claims for excessive bail and *Brady* violations, those claims are dismissed without prejudice.[13]

## 2.    P.D. Grosenick and Deputy P.D. Fahrendorf

Plaintiff's only factual allegation against Deputy P.D. Scott Fahrendorf, who was appointed to represent him after his arrests, is that he "violated [his] rights to due process by not showing [him] any evidence [he] asked for when the case was already

---

[12]The Court finds it premature to conclude, for instance, that the prosecutor defendants are entitled to absolute immunity, rather than qualified immunity, with regard to all of Plaintiff's listed violations. While prosecutors have absolute immunity for actions "intimately tied" to the judicial functions, they generally are entitled only to qualified immunity when performing investigative or administrative activities, or when advising law enforcement on investigative matters. *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Kalina v. Fletcher*, 522 U.S. 118 (1997) (finding that absolute immunity protects the filing of charges, but that a prosecutor has only qualified immunity for the act of submitting an affidavit to support probable cause); *Burns v. Reed*, 500 U.S. 478 (1991).

[13]In particular, it is possible Plaintiff intended to assert a claim for malicious prosecution against the Prosecutor Defendants. "To prevail on such a claim, [Plaintiff] must establish that the charges against him were 'instituted without any probable cause,' that the motive behind them 'was malicious,' and 'the criminal prosecution ended without a conviction.'" *Coleman v. Las Vegas Metro. Police Dep't*, 730 F. Supp. 3d 1097, 1116 (D. Nev. 2024) (internal quotations omitted). Prosecutors, as opposed to police officers, are also generally entitled to the protection of absolute immunity in malicious prosecution claims.

dismissed and withheld body cameras" (ECF No. 10 at 8.) He asserts that Fahrendorf "stated its against policy to give . . . the body cameras to the client" and that Fahrendorf refused to show him the policy. (*Id*.) As County Defendants correctly note, however, a public defender is generally not a state actor for purposes of Section 1983. (ECF No. 14 at 7-8.) *See West v. Atkins*, 487 U.S. 42, 48 (1988) (noting that to state a Section 1983 claim, a plaintiff must allege both that a right secured by the Constitution or laws of the United States was violated and that the violation was committed by a person acting under the color of state law). The Supreme Court has found that "[a] public defender does not act 'under color of state law' when performing a lawyer's traditional functions as counsel to an indigent defendant in a state criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also Miranda v. Clark County*, 319 F.3d 465, 468 (2003) (emphasizing that a public defender's function is "to represent his client, not the interests of the state or county").

Here, Deputy P.D. Fahrendorf was not acting in the interests of the County or the State in handling evidence from Agee's case. District courts in this circuit have found that actions taken by public defenders following representation – including with regard to evidence retention – are part of the scope of normal representation, and this Court agrees with their reasoning. *See, e.g.*, *Michael v. Siemers*, Case No. CV-12-5167-RHW, 2013 WL 5433509, at *9 (E.D. Wash. Sept. 27, 2013) (unreported) ("[T]he Court finds [the defense attorney's] actions taken with regard to the DVD and her client retention policy, including her subsequent decision to not release the file to [her former client], were undertaken in representation of [her client]."). Moreover, even if P.D. Fahrendorf was acting "under color of state law," it is not clear how his failure to turn over certain evidence in a client file after dismissal of charges violates any protected constitutional

1  right, especially because Plaintiff has other remedies to recover body camera footage

2  (for example, through a public records request).[14]

3      Plaintiff does not make any allegations against appointed County P.D. Grosenick,

4  simply listing her in the caption of his Amended Complaint without demonstrating

5  personal participation that could amount to a Section 1983 violation. *See Taylor*, 880

6  F.2d at 1045. And any claims against Grosenick related to the scope of client

7  representation would fail for the same reasons as the claims against Fahrendorf fail;

8  Grosenick's actions would not fall under the color of state law.

9      Accordingly, the Court dismisses Plaintiff's claims against Deputy P.D.

10  Fahrendorf and P.D. Grosenick with prejudice, as amendment would be futile.

11  **C.    Motion to Strike (ECF No. 46)**

12      Plaintiff filed an "Opposition to Defendants' Claims of Qualified and Sovereign

13  Immunity" (ECF No. 36), which County Defendants' move to strike as a fugitive

14  document under Fed. R. Civ. P. 12(f) and LR 7-2(g) (ECF No. 46). Plaintiff timely

15  submitted oppositions to County and City Defendants' motions to dismiss, and his

16  additional opposition presents further arguments on related issues, without leave from

17  the Court to supplement his responsive filings as required under LR 7-2(g). Accordingly,

18  the Court grants the motion to strike (ECF No. 46). In striking the unauthorized

19  supplement, the Court notes that, to the extent Plaintiff filed the document to argue that

20

---

21      [14]Plaintiff argues in response to County Defendants' Motion that he "requested
22  body footage from Scott Fahrendorf due to the fact of being accused of not cooperating
with the arrest . . . . The importance of the footage being released was high due to the
23  fact that Plaintiff was being accused of Resisting a Public Officer and by showing he
wasn't resisting would of reduced the Excessive Bail and the time spent in custody due
24  to not being a threat to society." (ECF No. 26 at 2.) He also argues that the footage
would show "the lack of the Police Officers disclosing the reasoning as to why Plaintiff
25  was being arrested and wasn't aware until he arrived at the Washoe County Detention
Center" and that the withholding of this evidence "violated Plaintiff's 6th Constitutional
26  Amendment [rights]." (*Id.*) However, there is no direct connection between the release
of the evidence to Agee himself—regardless of what the body camera footage does or
27  does not show—and a reduction in bail that had already been set by the state court, or
between the evidence itself and a previous violation of his rights during arrest. In other
28  words, the public defender defendants were not the *cause* of alleged constitutional
deprivations by RPD officers or by others setting bail.

1    sovereign immunity does not prohibit his claims against local government entities (ECF

2    No. 36 at 2), this order has already addressed the requirements to show municipal

3    liability under the cases Plaintiff cites in the now-stricken filing. *See, e.g.*, *Monell*, 436

4    U.S. at 691. Consideration of the supplemental document would not alter the Court's

5    ruling dismissing the claims against the City of Reno without prejudice.

6        **D.    Motion to Amend (ECF No. 53)**

7        Plaintiff moves to file a second amended complaint under Fed. R. Civ. P. 15,

8    adding allegations related to an arrest which occurred on October 12, 2023 – several

9    months after the February and May arrests underlying his existing claims – and bringing

10   a Section 1983 claim based on a Fifth Amendment violation.[15] (ECF No. 53.)

11   Defendants oppose the Motion to Amend, contending that the proposed amendment

12   would be futile. (ECF No. 61.) Because the Court has already granted Plaintiff leave to

13   amend to correct deficiencies in the existing Amended Complaint, the Court finds the

14   Motion to Amend moot. However, the Court further denies Plaintiff's request to assert a

15   Fifth Amendment claim based on the October 2023 arrest in a second amended

16   complaint, should he choose to file one, because the Court finds he cannot state that

17   claim as a matter of law. If Plaintiff wishes to assert other viable Section 1983 claims

18   arising from the October 2023 arrest, he may do so only to the extent they are not

19   brought under the Fifth Amendment regarding disclosure of his identity.

20       Under Fed. R. Civ. P. 15(a), leave to amend "should [be] freely give[n] . . . when

21   justice so requires." *See Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152

22   (9th Cir. 2011). Nevertheless, the "general rule that parties are allowed to amend their

23   pleadings . . . does not extend to cases in which any amendment would be an exercise

24   in futility or where the amended complaint would also be subject to dismissal."

25   *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998).

26

27       [15]Although Plaintiff states that a copy of the proposed second amended
     complaint is attached to the Motion to Amend as Exhibit A (ECF No. 53 at 3), no
28   proposed amended pleading is attached.

In moving to amend, Plaintiff alleges that on October 12, 2023, he was arrested by City of Reno Officers Burda, Thornton, and Brunson. (ECF No. 53 at 2.) During the arrest, Agee invoked his Fifth Amendment right to remain silent, "yet the officers repeatedly asked Plaintiff for his name after the arrest." (*Id.*) Plaintiff was "subsequently charged for resisting arrest for not answering their questions, despite having invoked the right to remain silent." (*Id.*) The Court agrees with Defendants that, as a matter of law, it would be an "exercise in futility" to permit Plaintiff to file an amend solely to attempt to state a Fifth Amendment claim based on the October 2023 arrest. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself" and protects only testimonial and incriminating compelled communications. *See United States v. Hubbell*, 530 U.S. 27, 34-38 (2000). The compelled disclosure of an individual's name is not a violation of the Fifth Amendment "absent a reasonable belief that the disclosure would tend to incriminate him." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 190-91 (2004). "Answering a request to disclose a name is likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances." *Id.* at 191. Here, Plaintiff alleges that the officers demanded his name after they were called to the scene of an alleged domestic disturbance, only "after the arrest." (ECF No. 53 at 2.) Under these circumstances, Agee's identity *itself* was not unusually incriminating, as he was already being apprehended by police for unrelated reasons. And as Defendants note, other individuals at the scene involved in the incident knew Agee's name and identity and officers could have ascertained this information regardless of Plaintiff's disclosure – making the request comparatively insignificant. *See also generally Vega v. Tekoh*, 597 U.S. 134, 150 (2022) (holding that a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), does not necessarily amount to a violation of the Fifth Amendment supporting liability under Section 1983).

The Court also notes that in his reply (ECF No. 63) to Defendants' opposition, Plaintiff appears to make new arguments unrelated to the Fifth Amendment claim

underlying his original Motion to Amend. It is unclear from the reply whether these new arguments relate to the October 2023 arrest or the earlier May and February 2023 arrests, or whether Plaintiff is attempting to add additional claims on separate constitutional bases. Agee's contentions here include "Lack of a Written Statement from the Alleged Victim," "Lack of Probable Cause," "Arrest Based on Officer Intent Rather than Evidence," "Charges Cannot be Dismissed Solely Due to Lack of Witness Cooperation," and "Officer Misconduct and Harm to Plaintiff." (*Id.* at 2.) Plaintiff also cites the Fourth Amendment and points to his constitutional right to "protection against wrongful arrest and excessive force." (*Id.* at 1-2.) The Court will not consider new contentions asserted for the first time in a reply in this order. But to the extent Plaintiff seeks to bring Section 1983 claims related to his October 2023 arrest and wishes to base those claims on constitutional deprivations distinct from the non-viable Fifth Amendment theory discussed above, he may do so in his second amended complaint. Plaintiff is reminded that any new claims against officers or others involved in the October 2023 arrest must include factual assertions sufficient to support the individual elements of those claims. *See West*, 487 U.S. at 48.

### E.    Leave to Amend

In sum, the Court grants both City Defendants' Motion (ECF No. 16) and County Defendants' Motion (ECF No. 14), dismissing claims against all Defendants in this action except for those asserted against individual RPD Officers Rose, Jones, and Staples. However, the Court gives Plaintiff leave to amend his claims against the following defendants: (1) Police Chief Nance; (2) the City of Reno; (3) Prosecutor Defendants, *only* to the extent he intends to bring claims other than those for excessive bail and *Brady* violations dismissed with prejudice; (4) Defendants involved in the October 2023 arrest identified in his Motion to Amend, *only* to the extent he intends to bring Section 1983 claims other than the Fifth Amendment claim dismissed with prejudice.

If Plaintiff chooses to file a third amended complaint, he is advised that his third amended complaint *replaces* the original complaint and previously amended complaints, and, thus, the third amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"). *See also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). Plaintiff's third amended complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit including the ones found colorable in this order. *This includes the claims currently proceeding against RPD Officers Rose, Staples and Jones.* In other words, if Plaintiff chooses to file a third amended complaint, he must reassert his claims against these officers (and fully state facts supporting these claims) if he wishes to continue pursuing them; he is cautioned that the officers will have another opportunity to answer the third amended complaint or instead to move to dismiss.

The Court notes that if Plaintiff chooses to file a third amended complaint curing the deficiencies, as outlined in this order, Plaintiff must file the third amended complaint within 30 days from the date of entry of this order. If Plaintiff chooses not to file a third amended complaint, this case will proceed only on the claims against RPD Officers Rose, Staples, and Jones.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions before the Court.

It is therefore ordered that County Defendants' Motion to Dismiss (ECF No. 14) is granted as to all claims. Plaintiff's claims against Defendants Fahrendorf and Grosenick

are dismissed with prejudice. Plaintiff's excessive bail and *Brady* violation claims against Defendants Hollandsworth and Hicks are further dismissed with prejudice. To the extent Plaintiff intended to assert other claims against Hollandsworth and Hicks, those claims are dismissed without prejudice.

It is further ordered that City Defendants' Motion to Dismiss (ECF No. 16) is granted as to all claims. Plaintiff's claims against Defendants Kathryn Vance and the City of Reno are dismissed without prejudice and with leave to amend. All other claims against the moving City Defendants are dismissed with prejudice.

It is further ordered that County Defendants' Motion to Strike (ECF No. 46) is granted.

The Clerk of Court is further directed to strike the document titled "Opposition to Defendants' Claims of Qualified and Sovereign Immunity" (ECF No. 36).

It is further ordered that Plaintiff's Motion to Amend (ECF No. 53) is denied as moot. Plaintiff may raise claims related to the October 2023 arrest identified therein in an amended pleading, only to the extent described in this order.

It is further ordered that, if Plaintiff chooses to file a third amended complaint curing the deficiencies of his Amended Complaint, as outlined in this order, Plaintiff must file the third amended complaint within 30 days from the date of entry of this order.

It is further ordered that, if Plaintiff chooses not to file a third amended complaint, this action will proceed immediately and only on his claims against Defendants Rose, Staples, and Jones.

DATED THIS 18th Day of February 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE