UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KEENEN R. AGREE, | Case No. 3:24-cv-00306-MMD-CSD |
| Plaintiff, | ORDER |
| v. | |
| RENO POLICE DEPARTMENT, *et al.,* | |
| Defendants. | |

I.    **SUMMARY**

*Pro se* Plaintiff Keenen R. Agee brings this action under 42 U.S.C. § 1983, alleging that the City of Reno, Reno Police Department ("RPD") officers, the Washoe County District Attorney ("DA") and Deputy DA ("Prosecutor Defendants"), and Washoe County Child Protective Services ("CPS") representatives ("CPS Defendants") violated his civil rights when he was arrested on three occasions in 2023 and prosecuted for domestic battery, among other offenses, in Nevada state court. (ECF No. 96 ("Third Amended Complaint" or "TAC").) All state criminal charges filed against Plaintiff were ultimately dismissed before reaching trial.

Before the Court are Defendants'[1] three motions to dismiss (ECF Nos. 101, 102, 156)[2] and various motions and objections[3] by Plaintiff (ECF Nos. 139, 140, 141, 163,

---

[1]RPD Officers Rose, Jones, and Staples answered Plaintiff's Amended Complaint (ECF No. 15) and do not move for dismissal with these remaining Defendants.

[2]Plaintiff responded. (ECF Nos. 107, 106, 159.) Defendants replied. (ECF Nos. 117, 116, 162.)

[3]Plaintiff also moves for summary judgment (ECF No. 160) but the Court granted Defendants' motion to extend time until after the Court's ruling on the pending motions to dismiss. (ECF No. 167.) Because this order affects the claims asserted in the TAC upon which Plaintiffs seek summary judgment, the Court denies Plaintiff's motion for

169, 171, 173)[4]. For the reasons explained below, the Court grants Defendants' motions to dismiss (ECF Nos. 101, 102, 156), grants Plaintiff limited leave to amend claims against certain Defendants, and denies Plaintiffs' motions and objections (ECF Nos. 139, 140, 141, 163, 169, 171, 173).

## II.    BACKGROUND

The Court incorporates the facts recited in the order addressing Defendants' prior motions to dismiss. (ECF No. 94 at 2-5.) As relevant to the pending motions addressed in this order, Plaintiff was arrested by RPD on three separate occasions in 2023. (ECF No. 96 at 2.) Plaintiff was arrested on February 2 ("February Arrest") by RPD Officer Derek Jones, on May 29 ("May Arrest") by RPD Officers Christopher Rose and Dylan Staples, and on October 12 (October Arrest) by RPD Officers Burda, Brunson and Thornton.[5] (ECF No. 96 at 2-3.) All criminal charges resulting from the arrests were ultimately dropped. (*Id.* at 2.)

Plaintiff filed this lawsuit in July of 2024. (ECF No. 1.) Defendants moved to dismiss.[6] (ECF Nos. 14, 16.) The Court granted Defendants' motions to dismiss but also granted Plaintiff leave to amend his complaint with regard to certain Defendants, including adding claims against the officers involved in the October Arrest. (ECF No. 94 at 20-22.)

---

summary judgment (ECF No. 160) without prejudice to Plaintiff filing another motion for summary judgment.

[4]Defendants filed responses (ECF Nos. 144, 146. 174.) Defendants did not respond to Plaintiff's motion to file a sur-reply (ECF No. 163) or Plaintiff's objections (ECF Nos. 171, 173) to Magistrate Judge Denney's September 4, 2025 order (ECF No. 170). Plaintiff filed a notice of Defendants' non-opposition. (ECF No. 179). Plaintiff replied to all of Defendants' responses. (ECF Nos. 145, 147, 175.)

[5]Plaintiff does not state in the TAC that that Defendants Burda, Brunson, and Thornton arrested him on October 12, 2023. But the pleadings regarding Plaintiff's motion to add claims against these officers confirm this fact, as conceded by Defendants. (ECF Nos. 53, 61, 63.)

[6]Defendants Jones, Rose, and Staples did not move to dismiss and instead filed an answer. (ECF No. 15.)

2

1    Plaintiff filed the Third Amended Complaint. (ECF No. 96.) Defendants Jones,

2    Rose, and Staples answered the TAC. (ECF No. 103.) The remaining Defendants now

3    move to dismiss the claims against them under Federal Rule of Civil Procedure

4    12(b)(6). (ECF Nos. 101, 102, 156.)

5    Between April and September of 2025, Magistrate Judge Craig S. Denney held

6    two hearings and addressed various discovery-related disputes between the parties.

7    (ECF Nos. 127, 137, 170.) Plaintiff objects to the Magistrate Judge's rulings and seeks

8    his reassignment. (ECF Nos. 139, 140, 141, 171, 173.)

9    **III.    DEFENDANTS' MOTIONS TO DISMISS**

10    Plaintiff names thirteen Defendants in the TAC. (ECF No. 96.) Ten Defendants

11    bring three separate motions to dismiss Plaintiff's claims against them. (ECF No. 102,

12    101, 156).[7] The Court addresses each motion and each Defendant in turn.[8]

13    **A.    Reno Municipality and Police Leadership (ECF No. 102)**

14    Defendants Reno Police Chief Kathryn Nance and City of Reno, both

15    represented by the Reno City Attorney, move to dismiss Plaintiff's claims against them.

16    (ECF No. 102 at 2.) The Court addresses the arguments for dismissal as to each

17    Defendant.

18    **1.    Police Chief Nance**

19    RPD Chief Kathryn Nance moves to dismiss Plaintiff's claims against her,

20    arguing Plaintiff fails to allege any personal conduct by her that deprived him of a

21    protected right. (ECF No. 102 at 5.) The Court agrees. Considering Plaintiff fails to

22    address this previously-identified deficiency in the TAC and his responses still do not

---

23

24    [7]As noted, Defendants Jones, Rose, and Staples answered the TAC. (ECF No. 103.)

25    [8]While Defendants proactively argue Plaintiff does not sufficiently allege any
26    emotional distress tort (ECF No. 101 at 15) and Plaintiff responds that his "emotional
      distress claim is legal valid" (ECF No. 107 at 4), the Court determines that Plaintiff only
27    alleges constitutional violations under section 1983 against Defendants. (ECF No. 96 at
      2). Plaintiff does not raise any claim for intentional infliction of emotional distress or
28    negligent infliction of emotional distress, separate torts with distinct elements. Plaintiff
      merely alleges emotional distress as damages. (ECF No. 96 at 2.)

1   identify any personal action or inaction by Nance, the Court dismisses her from the

2   lawsuit.

3        As the Court previously advised Plaintiff, a supervisor such as Police Chief

4   Nance may only be liable for the unconstitutional conduct of her employees where she

5   personally "participated in or directed the violations, or knew of the violations and failed

6   to act to prevent them." (ECF No. 94 at 8 (quoting *Taylor v. List*, 880 F.2d 1040, 1045

7   (9th Cir. 1989).) Plaintiff names RPD Chief Kathryn Nance among the Defendants but

8   does not mention her again or identify any action or inaction attributable to her. (ECF

9   No. 96 at 1.) Plaintiff outlines each claimed violation and identifies the relevant

10  Defendants in the TAC, but Nance is not included within any of the factual allegations.

11  (*Id.* at 2-4.)

12       In response to Chief Nance's motion to dismiss,[9] Plaintiff claims he "alleges that

13  Chief Nance failed to supervise and train officers adequately, leading to repeated

14  violations of Plaintiff's rights." (ECF No. 106 at 2.) But Plaintiff fails to identify any facts

15  in support of this conclusory allegation either in the TAC or his response. Moreover, as

16  the Court previously identified, allegations of "improper training" are "more properly

17  directed against the municipality" rather than Nance in her personal capacity. (ECF No.

18  94 at 9.) Plaintiff attaches various documents to his response, including Defendant City

19  of Reno's responses to Plaintiff's second set of interrogatories. (ECF No. 106 at 20.)

20  Plaintiff writes on the cover page that "Answers are to obstruct not to be transparent.

21  Which shows Kathryn Nance involvement." (*Id.*) Even if Plaintiff identified specific

22  examples of obfuscation by the City in its discovery responses, which he does not, this

23      ————————————————

24      [9]Defendants argue that the Court "may not look beyond the complaint to a
    plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion

25  to dismiss," in its ruling. (ECF No. 116 at 2-3 (quoting *Ranch Realty, Inc. v. DC Ranch
    Realty, LLC*, 614 F. Supp. 2d 983, 987 (D. Ariz. 2007) (citing *Schneider v. California*

26  *Dept. of Corrections,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998))).) But the Court may
    consider these materials in determining whether to grant leave to amend the complaint.

27  *See Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.,* 268 F.3d 1133, 1137 (9th
    Cir. 2001). Therefore the Court reviews Plaintiff's responses to all of the proffered

28  motions in order to determine whether to grant Plaintiff leave to amend.

1   still would not support a conclusion that Chief Nance personally "participated in or

2   directed the violations, or knew of the violations and failed to act to prevent them."

3   *Taylor*, 880 F.2d at 1045. Moreover, the Court already previously instructed Plaintiff that

4   he "may not merely resort to the same facts about general RPD policy and custom that

5   he also uses to sue the City itself" in his claim against Nance. (ECF No. 94 at 9.)

6          The Court already identified this same defect in Plaintiff's prior complaint, and

7   "cautioned" Plaintiff that "should he seek to support a claim against Nance in an

8   amended complaint, he must allege facts going to her participation, direction, or

9   knowledge and lack of intervention in a constitutional deprivation at the hands of RPD

10  Officer Defendants under her supervision." (*Id.*) Despite this instruction, Plaintiff still fails

11  to allege any facts regarding Nance's personal role in the alleged unconstitutional

12  conduct. Therefore, the Court now dismisses Nance from the suit.

13                        **2.      City of Reno**

14         The City of Reno ("City") moves to dismiss, arguing Plaintiff fails to allege that a

15  policy or custom of the City caused his alleged deprivation. (ECF No. 102 at 10.)

16  Liberally construing Plaintiff's TAC and responses,[10] Plaintiff seeks to hold the City

17  liable for failure to train employees, a custom of targeting Plaintiff, a custom of muting

18  bodycam footage, and a policy of unconstitutional discretion regarding medical

19  transportation. The Court finds the TAC does not include sufficient factual allegations for

20  any of these theories.

21         Municipal entities like the City may only be liable under Section 1983 when "a

22  government's policy or custom. . . inflicts the injury." *Monell v. Dep't of Soc. Servs. of*

23  *City of New York*, 436 U.S. 658, 691 (1978). The plaintiff must plausibly allege "a direct

24  causal link between a [] policy or custom and the alleged constitutional deprivation." *Bell*

25  *v. Williams*, 108 F.4th 809, 824 (9th Cir. 2024) (quoting *City of Canton v. Harris*, 489

26  U.S. 378, 385 (1989)). Generally, there are four different ways a plaintiff may identify a

27  _____

28  [10]Pleadings from *pro se* litigants like Plaintiff must be liberally construed. *See*
    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"policy or custom." First, the plaintiff may identify an expressly adopted municipal policy. *See id*. at 661, 691 (finding New York agencies may be liable under Section 1983 for an official policy requiring pregnant employees to take unpaid leaves of absences). Second, a plaintiff may demonstrate the entity had "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, (1988) (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167–168 (1970)). Third, the plaintiff can allege that the actions of a government official "responsible for establishing final government policy" caused the constitutional injury. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-4 (1986). Lastly, the plaintiff can demonstrate the entity's failure to adequately train or supervise municipal employees caused the injury. *See City of Canton*, 489 U.S. at 388–91; *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167–68 (9th Cir. 2014).

Plaintiff expressly seeks municipal liability under *Monell* in the TAC, citing "Failure to Train & Supervise" (ECF No. 96 at 4.) As discussed above, this is a viable path to proving municipal liability. But a "formulaic recitation of the elements of a cause of action" is not sufficient to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To successfully allege municipal liability for failure to train, the plaintiff "must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees" *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021). To prove "deliberate indifference," the plaintiff must show that "in light of the duties assigned to specific … employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. The plaintiff must show that the

6

1  inadequate training was the "moving force behind the deprivation." *Sandoval*, 756 F.3d

2  at 1167–68 (citing *City of Canton*, 489 U.S. at 387-90).

3      The Court previously advised Plaintiff on this legal standard and instructed him to

4  allege specific facts to meet this failure to train theory of *Monell* liability. (ECF No. 94 at

5  10-12.) But Plaintiff still offers only a mere conclusory claim. Moreover, municipal

6  liability "is at its most tenuous where a claim turns on failure to train." *Connick v.*

7  *Thompson*, 563 U.S. 51, 61 (2011) (citation omitted*); see also Benavidez*, 993 F.3d at

8  1153–54. Accordingly, the Court now dismisses Plaintiff's failure to train *Monell* liability

9  claim.

10      In his response to the City's motion to dismiss, Plaintiff reasserts his *Monell* claim

11  but instead of referencing RPD's failure to train or supervise, Plaintiff refers to "repeated

12  targeting of Plaintiff and the manipulation of body camera footage" as "suggest[ing] a

13  pattern of misconduct attributable to municipal policy or custom." (ECF No. 106 at 2.) In

14  the TAC, Plaintiff references being "falsely arrested multiple times," identifying three

15  instances. (ECF No. 96 at 2.) "An unconstitutional policy need not be formal or written to

16  create municipal liability under Section 1983; however, it must be so permanent and

17  well settled as to constitute a custom or usage with the force of law." *Gordon v. County*

18  *of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (citation and internal quotation marks

19  omitted)). Without more information, these three otherwise seemingly "isolated or

20  sporadic incidents" do not evidence "sufficient duration, frequency and consistency

21  [such] that the conduct has become a traditional method of carrying out policy." *Id.*

22  (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). Similarly, Plaintiff alleges

23  in the TAC that "Defendants" violated his rights by "[m]uting body camera footage to

24  hide evidence of misconduct." (ECF No. 96 at 2.) But the fact that "employees or

25  agents" of the government allegedly caused an injury is not sufficient to hold the

26  municipal entity responsible. *See Monell*, 436 at 691.

27      In the TAC, and in his response to the City's motion to dismiss, Plaintiff attaches

28  various RPD General Orders as exhibits. (ECF Nos. 96-2 at 16-18, 20-21; 96-3 at 1, 8;

106 at 4-17.) While the General Orders claim to "not enlarge… civil… liability in any way," they may qualify as official RPD policies under *Monell*. (ECF No. 106 at 4, 6, 9, 12, 15.) Plaintiff highlights various portions of the attached General Orders without any elaboration. But Plaintiff fails to identify how these policies caused any alleged constitutional violations. In fact, most of the policies, if properly followed, serve to protect constitutional rights. For example, Plaintiff alleges he "requested medical care but was denied and taken to jail instead." (ECF No. 96 at 3.) He then highlights that the Transport of Injured or Sick General Order requires that when RPD "encounters…sick or injured persons requiring emergency medical care, the employee will ensure an ambulance responds to evaluate the person(s) and transport the person(s) to a medical facility for treatment if necessary." (ECF No. 106 at 6.) But that requirement could not have caused Plaintiff's alleged constitutional injuries. If Plaintiff needed emergency medical care, this policy actually would have protected Plaintiff and prevented his alleged constitutional harm.

Plaintiff seems to only expressly identify one section of one General Order as a relevant *Monell* policy for the purposes of his section 1983 claim. The same General Order on Transport of Injured or Sick states: "At their discretion officers may transport persons not requiring emergency medical care to a medical facility." (*Id.* at 7.) Plaintiff annotates: "This can be a violation of my constitutional rights[,] by [']at officer's discretion['], because officer's discretion is not above the law of the land." (*Id.*) "[I]t is clearly established that officers must seek to provide an injured detainee or arrestee with objectively reasonable medical care in the face of medical necessity creating a substantial and obvious risk of serious harm, including by summoning medical assistance." *D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 771 (9th Cir. 2025). But the "mere lack of due care by a state official is not enough to show a constitutional violation." *Alexander v. Nguyen*, 78 F.4th 1140, 1145 (9th Cir. 2023) (quoting *Gordon*, 888 F.3d at 1125). Plaintiff may pursue medical indifference claims against the individual RPD officers based on the facts alleged against the individual officers. But the

1    RPD policy granting officer's discretion to "transport persons *not* requiring emergency
2    medical care to a medical facility" does not facially violate this constitutional right. (ECF
3    No. 106 at 7 (emphasis added).)

4        In sum, the Court dismisses the claims against the City.

5    **B.    Washoe County Employees (ECF No. 101)**

6        Plaintiff sues Washoe County employees at the DA's office and CPS. These
7    Washoe County Defendants, represented by joint counsel, move to dismiss Plaintiff's
8    claims against them. (ECF No. 101.) The Court address their arguments for dismissal
9    as to the employees for each agency.[11]

10    **1.    Prosecutor Defendants**

11        Plaintiff sues Washoe County DA Hicks and Deputy DA Hollandsworth for
12    malicious prosecution and witness suppression. (ECF No.  96 at 3.) The Court
13    considers each claim in turn.

14    **a.    Malicious Prosecution**

15        The Prosecutor Defendants argue Plaintiff's malicious prosecution claim fails
16    because the TAC does not allege facts showing lack of probable cause or malicious
17    intent. (ECF No. 101 at 5.). Alternatively, the Prosecutor Defendants argue the claim is
18    barred by prosecutorial immunity. (*Id.*). The Court agrees that the TAC does not
19    sufficiently allege a malicious prosecution claim, nor one that could plausibly overcome
20    prosecutorial immunity. Liberally construing the *pro se* Plaintiff's pleadings, the Court
21    will narrowly grant leave to amend only to the extend he can allege facts to meet the
22    legal requirements outlined below.

23

24    ————————————

25        [11]While Defendants proactively argue any claims against Washoe County District
26    Attorney's Office and Washoe County fail as a matter of law (ECF Nos. 101 at 14; 107
      at 6) and Plaintiff responds that Washoe County is liable under *Monell* (ECF No. 107 at
27    4), Plaintiff does not name Washoe County as a defendant. (ECF No. 96.) Nor did the
      Court grant Plaintiff leave to add Washoe County as a defendant. (ECF No. 94 at 20.)
28    The Court therefore clarifies that Washoe County is not a defendant to this suit.

To prevail on a claim of malicious prosecution, a plaintiff "must establish that the charges against him were 'instituted without any probable cause,' that the motive behind them 'was malicious,' and 'the criminal prosecution ended without a conviction.'"[12] *Coleman v. Las Vegas Metro. Police Dep't*, 730 F. Supp. 3d 1097, 1116 (D. Nev. 2024) (quoting *Thompson v. Clark*, 596 U.S. 36, 44, 49 (2022)). A malicious motive is defined as "without probable cause and for a purpose other than bringing the defendant to justice." *Thompson*, 596 at 44 (citations omitted). "[P]robable cause is an absolute defense to malicious prosecution." *Lassiter v. City of San Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009).

Defendants argue Plaintiff "cannot state a claim for malicious prosecution" because "Plaintiff's exhibits show that the criminal court found probable cause existed." (ECF No. 101 at 5.) In the TAC, Plaintiff attaches records from Washoe County that the court found probable cause at an initial hearing in the criminal cases resulting from the February and May arrests. (ECF No. 96-2 at 1, 2.) But the Nevada Supreme Court held that this "initial determination. . . does not constitute irrebuttable evidence of probable cause…" *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 49 (2005), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 181 P.3d 670 (2008). Therefore, "a preliminary hearing probable cause determination is only *prima facie* evidence of probable cause, which can be overcome in a later proceeding with evidence of 'false testimony or suppressed facts.'" *Scafidi v. Las Vegas Metro. Police Dep't,* 966 F.3d 960, 963 (9th Cir. 2020) (quoting *Jordan*, 110 P.3d at 48–49).

In the TAC, Plaintiff alleges the "the DA" stopped a favorable witness from testifying regarding the charges resulting from the May Arrest. (ECF No. 96 at 3.) It is unclear if the witness planned to testify at the probable cause hearing or a later hearing or whether the testimony would have affected the probable cause finding. Nevertheless,

---

[12]There is no dispute regarding the third element, as the criminal charges against Plaintiff were ultimately dismissed. (ECF Nos. 96 at 2, 102 at 3.)

allegations that Prosecutor Defendants suppressed evidence that would have undermined a probable cause finding could plausibly state a *prima facie* case for malicious prosecution.[13]

Even if Plaintiff effectively alleged that Prosecutor Defendants suppressed this testimony at this preliminary hearing, this activity would likely be protected by prosecutorial immunity. Prosecutors are absolutely immune from suit for actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Accordingly, "a prosecutor enjoys absolute immunity from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial." *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005) (citing *Imbler,* 424 U.S. at 430.) This immunity also extends to "direct participation in a probable cause hearing." *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 491 (1991)).

In his response, Plaintiff claims "Defendants advised law enforcement on suppressing evidence, making their role investigative rather than prosecutorial." (ECF No. 107 at 2 (citing *Genzler*, 410 F.3d at 638).) Plaintiff also claims in his response that the probable cause finding was invalid because Defendants "fabricated evidence." (*Id.* at 3.) But Plaintiff provides no facts about what evidence was allegedly suppressed or fabricated or when or how Prosecutor Defendants advised law enforcement. Accordingly, the Court dismisses the malicious prosecution claims against the Prosecutor Defendants.

///

---

[13]In the exhibits to the TAC, Plaintiff annotates on documentation of the probable cause determination hearings, in both cases, that he "was not there." (ECF No. 96-2 at 1, 2.) Under Nevada law, "[t]he defendant may cross-examine witnesses against him or her and may introduce evidence in his or her own behalf" at these preliminary examinations. NRS § 171.196.5, The supplied document indicates Plaintiff attended his first appearance and bail hearing at 9:30 am in both cases, but it is not clear from the record whether Plaintiff attended the probable cause hearing held at 12:00 pm. (ECF No. 96-2 at 1, 2.) From this minor annotation, the Court cannot decipher how or why Plaintiff might not be present or how this relates to his claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.    Witness Suppression

Defendants argue Plaintiff's witness suppression claim is merely "a reformatted Brady claim, which was dismissed with prejudice." (ECF No. 101 at 2; 94 at 15.) The Court does not entirely agree with this characterization. The Sixth and Fourteenth Amendments guarantees criminal defendants the right to a fair trial, including "the right to offer testimony of witnesses." *Soo Park v. Thompson*, 851 F.3d 910, 919 (9th Cir. 2017) (quoting *Washington v. Texas*, 388 U.S. 14, 18–19 (1967)). Unlike a *Brady* violation claim, a lack of conviction does not bar a Section 1983 claim based on this right. *See id.* But because charges were dropped before Plaintiff faced a trial without this witness, Plaintiff has no claim for a right to compulsory process. And to the extent Plaintiff does seek to raise a *Brady* violation, the Court agrees with Defendants that this is barred in accordance with the Court's prior order. The Court therefore dismisses this witness suppression claim against the Prosecutor Defendants without leave to amend, as amendment would be futile given the undisputed facts.

### 2.    CPS Defendants

Plaintiff names three employees or agents of Washoe County Child Protective Services in the TAC. (ECF No. 96 at 1, 3.)[14] Plaintiff alleges these CPS Defendants violated his due process rights by relying on a false police report and charging Plaintiff without evidence or an opportunity to challenge the findings. (*Id.* at 3.) In its previous order, the Court granted Plaintiff leave to amend specific claims against four listed

///

///

///

_____

[14]Plaintiff names three CPS employees or agents as Defendants in the caption: Monica Martinez, Amber Howell, and Megan Hildebrand. (ECF No. 96 at 1.)  In the factual allegations, Plaintiff also mentions Tammy Williamson. (*Id.* at 3.) On Plaintiff's motion, Williamson was dismissed from this lawsuit in April 2025. (ECF No. 127.) Therefore, while Williamson is listed on the CPS Defendants' motion to dismiss, this order addresses only the three remaining Defendants. (ECF No. 101.)

1  defendants. (ECF No. 94 at 20.) The Court therefore dismisses the CPS Defendants

2  without prejudice.[15]

3      **C.    October Arrest Defendants (ECF No. 156)**

4      Defendants move to dismiss RPD Officers Burda, Thornton and Burnson

5  ("October Arrest Defendants") for insufficient service of process and failure to state a

6  claim. (ECF No. 156.)

7      The Court does not have jurisdiction over a defendant that has not been properly

8  served in accordance with Federal Rule of Civil Procedure 4. *See Direct Mail*

9  *Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

10  Rule 4 "is a flexible rule that should be liberally construed so long as a party receives

11  sufficient notice of the complaint." *Id.* (quoting *United Food & Commercial Workers*

12  *Union v. Alpha Beta Co.,* 736 F.2d 1371, 1382 (9th Cir.1984)). But "[n]either actual

13  notice, nor simply naming the defendant in the complaint" is sufficient. *Crowley v.*

14  *Bannister,* 734 F.3d 967 (9th Cir. 2013) (quoting *Jackson v. Hayakawa,* 682 F.2d 1344,

15  1347 (9th Cir.1982)). Under Rule 4(m), a defendant who remains unserved 90 days

16  after the complaint is filed must either be dismissed or the Court must order that service

17  be effectuated within a specified time. *See* Fed. R. Civ. P. 4(m). The Court must extend

18  the time for service where a plaintiff demonstrates good cause for the delay. *See id.*

19  While *pro se* litigants are held to less stringent standards than lawyers, *pro se* litigants

20  must still follow the Federal Rules of Civil Procedure. *See Jacobsen v. Filler*, 790 F.2d

21  1362, 1364 (9th Cir. 1986).

22      It is undisputed that Plaintiff failed to serve RPD Officers Burda, Thornton and

23  Burnson.[16] Plaintiff does not offer any explanation for this delay. While the Court

24  recognizes the limitations of Plaintiff's *pro se* status, he still successfully executed

---

26  [15]The Court dismisses on this ground and therefore does not address
Defendants' arguments that Plaintiff's due process and fabricated evidence claims fail
or that CPS Defendants are entitled to qualified immunity. (ECF No. 107 at 7-12.)

27

28  [16]Plaintiff filed the TAC on March 4, 2025. The 90-day deadline for service
passed on June 2, 2025.

1   summons for three other Defendants he added to the TAC. (ECF No. 97.) Plaintiff

2   persuasively argues that the October Arrest Defendants had actual notice because they

3   are represented by the same counsel as other served Defendants. (ECF No. 159 at 2-

4   3.) While actual notice is not a sufficient replacement for service of process, *see*

5   *Crowley,* 734 F.3d 967 (9th Cir. 2013), it is one of the factors a court may consider

6   when evaluating whether to invoke its broad discretion to grant additional time to effect

7   service. *See Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

8         Regardless, the Court agrees with Defendants that Plaintiff fails to state a claim

9   against the October Arrest Defendants. (ECF Nos. 156 at 6-8; 162 at 3.) The Court

10  previously granted Plaintiff leave to amend his complaint to add claims against

11  individuals related to the October Arrest. (ECF No. 94 at 18-20.) But the Court

12  "reminded [Plaintiff] that any new claims against officers or others involved in the

13  October 2023 arrest must include factual assertions sufficient to support the individual

14  elements of those claims." (*Id.* at 20 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988).)

15  Despite this warning, Plaintiff added the names of these three officers to the list of

16  defendants without including any factual allegations regarding the alleged constitutional

17  violations. (ECF No. 96 at 1, 2-3.) The one reference to the October Arrest is the

18  statement that "Plaintiff was falsely arrested multiple times, including on. . . October 12,

19  2023." (*Id.* at 1.) Besides the caption, Plaintiff does not mention Burda, Thornton, or

20  Brunson once.[17] (*Id.*)

21        Plaintiff seeks to file a sur-reply to the October Arrest Defendants' motion to

22  dismiss. (ECF No. 163.) Plaintiff alleges Defendants "incorrectly assert Plaintiff failed to

23

24        [17]In his response to the October Arrest Defendants' motion to dismiss, Plaintiff
25  mentions a "pattern of witness tampering and fabrication of probable cause, further
    supported by the fact that City Defendants drove witnesses to depositions, spoke to
26  them in advance, and pressured them to make statements – all of which were rejected."
    As discussed above, Plaintiff cannot raise a Brady violation claim or a witness
27  suppression claim as all charges from these three arrests were dropped. *See infra* III. B.
    1. Moreover, the generalized allegation that some unspecified Defendants' actions
28  contributed to a broader pattern of misconduct is not sufficient to hold RPD Officers
    Burda, Thornton and Burnson personally liable.

allege specific misconduct, despite Plaintiff clearly identifying that these officers falsely claimed Plaintiff had committed acts of domestic battery and resisting arrest, attempted to obtain statements from alleged witnesses, failed to secure any such statements, and nonetheless arrest Plaintiff without probable cause, resulting in charges that were subsequently dismissed." (*Id.* at 102.) But as discussed above, Plaintiff did not "clearly identify[]" these factual allegations in the TAC. Besides the general reference to a "false arrest[]" on October 12, the only indication of this incident in the TAC is an affidavit from Emma Deleon which is attached as an exhibit to the TAC without any context of explanation. (ECF No. 96-1 at 14.) Because Ms. Deleon was also the complaining witness from the February Arrest, it was unclear to the Court which incident her affidavit related to. Accordingly, the Court denies Plaintiffs motion to file a sur-reply. (ECF No. 163.)

For these reasons, the Court dismisses RPD Officers Burda, Thornton and Brunson from the case.

## IV.    PLAINTIFF'S MISCELLANEOUS MOTIONS

Plaintiff filed six motions requesting varied and occasionally overlapping relief. (ECF Nos. 139, 140, 141, 169, 171, 173.) The Court addresses them in turn.

### A.  ECF Nos. 139, 140[18]

Plaintiff objects to the Magistrate Judge's denial of his motion to compel relating to body camera footage and designating the Use of Force Report from May 29, 2023 ("the Report") as protected under the procedures set forth in the Protective Order.[19]

---

[18]The two filings are identical but they are filed twice because they contain different requested reliefs. *See* LR IC 2-2(b) ("For each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document.) The Court addresses these two filings collectively.

[19]The parties engaged in multiple filings and court-ordered meet-and-confers over the Use of Force Report relating to the May Arrest by Officers Dylan Staples and Christopher Rose. (ECF Nos. 95, 127.)

1   (ECF No. 139.)  The Magistrate Judge held a hearing to address these issues.[20] (ECF

2   Nos. 137, 138.) After hearing from the parties, the Magistrate Judge found Defendants

3   produced the body camera footage at issue and only modified the video to blur the

4   faces of the officers. (ECF No. 138 at 1.) In doing so, the Magistrate Judge rejected

5   Plaintiff's contention (ECF No. 125) that footage from the body cam was omitted or that

6   the body cam footage was improperly modified or muted. (ECF No. 138.) As for

7   Plaintiff's challenge to the Report being subject to the Protective Order, the Magistrate

8   Judge evaluated the particularized harm that would result from the disclosure of the

9   Report and the public and private interests of access and found "Defendants have

10  established good cause for maintaining confidentiality." (*Id.* at 2.) Having reviewed the

11  filings, the Court finds the Magistrate Judge did not clearly err.[21]

12      Plaintiff further challenges the Magistrate Judge's manner of addressing his

13  motions through "unrequested hearings" instead of through written orders. (ECF No.

14  139 at 3.) But the Court has inherent authority to manage its docket and may exercise

15  its discretion to hold a hearing to more expeditiously resolve disputes. *See Dietz v.*

16  *Bouldin*, 579 U.S. 40, 47 (2016) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631

17  (1962)) (holding that "a district court possesses inherent  powers that are 'governed not

18  by rule or statute but by the control necessarily vested in courts to manage their own

19  affairs so as to achieve the orderly and expeditious disposition of cases.'" ). Here, the

20  minutes of the hearing reflects the Court's rulings and the parties may request a

21

22

23      [20]In fact, the Magistrate Judge previously addressed these two issues at prior
    hearings. (ECF Nos. 95, 127.) This is the primary reason the Court will deny Plaintiff's
24  motion for leave to file late objection (ECF No. 141) as discussed below.

25      [21]In reviewing a magistrate judge's non-dispositive pretrial order, the magistrate's
    factual determinations are reviewed for clear error. *See* 28 U.S.C. § 636(b)(1)(A); *see*
26  *also* Fed. R. Civ. P. 72(a). "A finding is clearly erroneous when although there is
    evidence to support it, the reviewing body on the entire evidence is left with the definite
27  and firm conviction that a mistake has been committed." *United States v. Ressam*, 593
    F.3d 1095, 1118 (9th Cir. 2010) (quotation omitted).

28

transcript of the hearing. Plaintiff's suggestion of a lack of transparency because the Court provides oral instead of written rulings lacks any merits.

Plaintiff seeks reassignment of the Magistrate Judge under 28 U.S.C. § 455(a), arguing in gist that the Magistrate Judge is bias because he made adverse rulings and because of the process of addressing motions through scheduling hearings. (ECF No. 140 at 4.) 28 U.S.C. § 455(a) mandates disqualification if the judge's impartiality might reasonably be questioned. Section 455(a) requires an objective inquiry. *See United States v. Holland*, 519 F.3d 909, 912-14 (9th Cir. 2008). But this objective standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Id*. at 913 (citation omitted). Plaintiff cites the Magistrate Judge's "consistent denial of Plaintiff's motions despite factual and legal merit" and purported "apparent deference to defense explanations" as evidence of bias. But a judge's "adverse ruling is not sufficient case for recusal." *United States v. McTiernan*, 695 F.3d 882, 893 (9th Cir. 2012). As for resolving motions through scheduling hearings, the Magistrate Judge properly exercised his discretion to expeditiously resolve disputes and is not evidence of bias.

For these reasons, the Court overrules Plaintiff's objection (ECF No. 139) and denies Plaintiff's motion for reassignment of magistrate judge (ECF No. 140).

**B. ECF No. 141**

Plaintiff asks for leave to file a late objection to the Magistrate Judge's rulings during a hearing held on April 8, 2025. (ECF No. 141.) The Court denies Plaintiff's motion because Plaintiff has not demonstrated good cause for the late filing. More importantly, Plaintiff's objection raises some of the same arguments relating to the Magistrate Judge's rulings on the production of the body came footage and the Protective Order. (ECF Nos. 139, 140.) The Court already addressed and denied relief based on these similar arguments. *See infra* IV. A.

///

1

2      **C.  ECF No. 169**

       The Court denies Plaintiff's motion in limine (ECF No. 169) for two reasons.[22]

3   First, the motion does not comply with the Court's Local Rules which requires the

4   moving party to attach a "statement certifying that the parties have participated in the

5   meet-and-confer process and have been unable to resolve the matter without court

6   intervention." LR 16-3(a). This is required because parties may be able to resolve their

7   dispute without filing a motion. Second, the motion is premature at this point.[23] A motion

8   in limine is a procedural mechanism to limit testimony or evidence in a particular area in

9   advance of trial. *See U.S. v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009). The Court

10  has not yet scheduled trial. The Court accordingly denies Plaintiff's motion in limine

11  (ECF No. 169) without prejudice to Plaintiff filing the motion before trial and in

12  compliance with LR 16-3(a).

13     **D.    ECF Nos. 171, 173**

14       Plaintiff argues that the Magistrate Judge clearly erred in determining that his

15  filing—"Plaintiff's Initial Pretrial Disclosures"—falls within the category of discovery and

16  therefore should not be returned to him. (ECF Nos. 171 at 3; 173 at 204.) Even

17  assuming Plaintiff filed "trial-related disclosures" (ECF No. 171 at 3 (describing the filing

18  as "trial-related disclosures")), Plaintiff does not cite to a rule that allows for such a filing.

19  Disclosures for trial purposes will be presented to the Court in a proposed joint pretrial

20  order when the case is ready to be scheduled for trial. The current deadline for filing the

21  proposed joint pretrial order is 30 days after dispositive motions are resolved. (ECF No.

22  99 at 5.) It is currently too premature for Plaintiff to file any "trial-related disclosures".

23  Moreover, the form of the proposed pretrial order is established at LR 16-4.

24  _____

25     [22]Plaintiff also filed a reply in support of his motion in limine (ECF No. 175)

26  without seeking leave of court. *See* LR 16-3(a) ("Replies [in support of motions in limine] will be allowed only with leave of the court.") Accordingly, the Court will strike Plaintiff's reply brief.

27

28     [23]As Defendants point out, the Court previously denied Plaintiff's motion in limine as premature. (ECF Nos. 93; 174 at 2.)

1    Plaintiff also seeks reassignment of the Magistrate Judge, repeating grounds

2  raised in his earlier motion (ECF No 140) and adding additional allegations about

3  perceived treatments of the parties. The Court denies Plaintiff's request. Again, there is

4  no evidence that Judge Denney's "impartiality might reasonably be questioned" to

5  support Plaintiff's request under 28 U.S.C. § 455(a).

6  **V.    CONCLUSION**

7    The Court notes that the parties made several arguments and cited to several

8  cases not discussed above. The Court has reviewed these arguments and cases and

9  determines that they do not warrant discussion as they do not affect the outcome of the

10  Motions before the Court.

11    It is therefore ordered that Defendants' motions to dismiss (ECF Nos. 101, 102,

12  156) are granted. Police Chief Nance, CPS representatives Monica Martinez, Amber

13  Howell, and Megan Hildebrand, the City of Reno, DA Hicks, Deputy DA Hollandsworth,

14  and RPD Officers Burda, Thornton and Brunson are dismissed. Because Plaintiff has

15  been given an opportunity to amend and fails to allege facts sufficient to state a claim,

16  dismissal is with prejudice unless otherwise stated herein.

17    It is further ordered that Plaintiffs motion to file a sur-reply (ECF No. 163) is

18  denied.

19    It is further ordered that Plaintiff's objections (ECF Nos. 139, 171) are overruled

20  and Plaintiff's related motion for reconsideration (ECF No. 173) is denied.

21    It is further ordered that Plaintiff's motion for reassignment of Magistrate Judge

22  (ECF No. 140) is denied.

23    It is further ordered that Plaintiff's motion for leave to file late objection (ECF No.

24  141) is denied.

25    It is further ordered that Plaintiff's motion in limine (ECF No. 169) is denied. It is

26  further ordered that Plaintiff's reply in support of motion in limine (ECF No. 175) is

27  stricken.

28  ///

1       It is further ordered that Plaintiff's motion for summary judgment (ECF No. 160) is

2 denied without prejudice.

3

4       DATED THIS 7th Day of January 2026.

5

6

7       MIRANDA M. DU
      UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28